**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No: 3:25-CR-957 (LS)** |
| | § | |
| **v.** | § | |
| | § | |
| **CAPSULCN INTERNATIONAL CO.,** | § | |
| **LTD.,** | § | |
| | § | |
| **Defendant.** | § | |

**MOTION FOR CERTIFICATION OF FACTS AND ISSUANCE OF A SHOW CAUSE**
**ORDER FOR CIVIL CONTEMPT AGAINST**
**DEFENDANT CAPSULCN INTERNATIONAL CO., LTD.**

## I.      Introduction

Defendant CAPSULCN INTERNATIONAL CO., LTD ("CAPSULCN") has refused to

appear to answer charges that it violated the Controlled Substances Act, engaged in a smuggling

conspiracy, and engaged in international promotional money laundering, despite being fully aware

of the charges and its duty to appear. Given CAPSULCN's refusal to answer the charges against

it, the United States respectfully moves this Court (1) for certification of facts regarding the United

States' service of a second summons to CAPSULCN to appear for initial appearance and

arraignment on December 4, 2025, and CAPSULCN's failure to appear for its initial appearance

and arraignment on December 4, 2025; and (2) for issuance of an order for CAPSULCN to appear

at a date certain before the District Judge to show cause why it should not be adjudged in civil

contempt by reason of the certified facts. Should CAPSULCN be held in contempt by the District

Judge, the United States will request that CAPSULCN be fined an initial daily amount of $10,000,

to increase by $10,000 every four weeks until it reaches a maximum of $50,000 per day after 4 weeks—to accrue indefinitely until CAPSULCN's contempt is cured.

## II.     Statement of Facts

### A.     Background

On October 6, 2025, the United States filed a motion against CAPSULCN for a finding of actual notice of summons and for issuance of new summons to appear before the Court. *See* Motion for Finding of Actual Notice of Summons and for Issuance of New Summons to Appear Before the Court, Dkt. 37 (Oct. 23, 2025). The United States made this motion in response to CAPSULCN's refusal to appear for initial appearance and arraignment on September 5, 2025, pursuant to summons issued by the Clerk of Court on May 21, 2025. *See id*. The United States took several steps to serve the first summons to CAPSULCN pursuant to FED. R. CRIM. PRO. 4(c)(3)(D)(ii). *See id*. at 5–8. The United States served the summons via (1) direct service via FedEx to CAPSULCN's address of incorporation in the United Kingdom; (2) direct service via FedEx to CAPSULCN's known physical address located in the People's Republic of China, delivery of which was "Refused;" and (3) direct service via email and FedEx to CAPSULCN's retained counsel. *Id*. In response to the United States' efforts to serve CAPSULCN, an attorney representing CAPSULCN communicated to government counsel their client's refusal to appear for initial appearance and arraignment on September 5, 2025. *See id*. at 7–8.

### B. The Court Certified Facts that CAPSULCN Received Notice of the Summons and Issued Second Summonses to Appear Before the Court for December 4, 2025 Initial Appearance & Arraignment. CAPSULCN Still Refused to Appear.

In response to the United States' October 6, 2025, motion, the Court found CAPSULCN "was served by a means that gives notice under Federal Rule of Criminal Procedure 4(c)(3)(D)(ii) with a summons to appear before the [Court] to answer the indictment against it." *See* Order at 1,

Dkt. 41 (Nov. 10, 2025). The Court also found that "an attorney retained to represent [CAPSULCN] indicated that Defendant would not appear for the initial appearance and arraignment scheduled for September 5, 2025." *See id.* at *2.*

As a result, on November 12, 2025, the Court ordered that a second set of summons be issued to CAPSULCN for initial appearance and arraignment on December 4, 2025. *See id.* at 3. The Court authorized the United States to serve the summonses through CAPSULCN's "counsel via email, fax, FedEx, or certified mail." *See id.* The Court warned that should CAPSULCN "fail to appear for initial appearance and arraignment, an order may be issued by the appropriate Court to show why it should not be held in contempt of court." *See id.* at 2.

The United States served the summonses in conformance with the Court's order. Certificate of Service, Dkt. 37 (Oct. 23, 2025). On or about November 14, 2025, the United States emailed the summonses to CAPSULCN's counsel. *See id.* at ¶ 3. At least one of CAPSULCN's attorneys acknowledged receipt via an email "read receipt." *See id.* Additionally, Special Agent Kathy McGlone sent the summonses to CAPSULCN's counsel via FedEx. *See id.* at ¶ 4. Those summonses were delivered on or about November 20, 2025. *See id.* Special Agent McGlone further faxed the summonses to CAPSULCN's counsel and confirmed that they were successfully transmitted. *See id.* at ¶¶ 5–6.

Special Agent McGlone also sent a summons via FedEx to CAPSULCN's registered office address in the United Kingdom. *See id.* at ¶ 7. That summons was delivered on or about November 19, 2025. *See id.* Additionally, on or about November 12, 2025, Special Agent McGlone learned that CAPSULCN created the Chinese-based domain, "www.capsulcn.com.cn," to resume online sales. *See id.* at ¶ 8. On or about November 13, 2025, Special Agent McGlone sent a summons via

FedEx to CAPSULCN's Chinese address displayed on "www.capsulcn.com.cn." *See id.* That summons was delivered on or about November 18, 2025, signed for by "QIANSHOU." *See id.*

On December 4, 2025, the Court called CAPSULCN's matter on the docket for initial appearance and arraignment. Minute Entry, Dkt. 45 (December 4, 2025). However, CAPSULCN failed to appear. As a result, the United States now submits that CAPSULCN is in contempt of the Court.

## III. Legal Authorities

### A. This Court has inherent authority to enforce its lawful orders (to include summonses) through contempt proceedings.

Contempt of court orders is codified in 18 U.S.C. § 401(3), which provides that a district court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Apart from this authority, the power to sanction for contempt is "inherent in all courts" and is best understood in terms of its utility—its effects and the purposes it serves in the administration of justice. *See Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 327 (1904). A contempt is civil when its sanction seeks to coerce the defendant into compliance with the court's rules. *United States v. United Mine Workers of America*, 330 U.S. 258, 302–03 (1947). Federal district courts have contempt authority over all their lawful orders, including summonses to appear. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987); *United States v. Bernadine*, 237 F.3d 1279, 1283–84 (11th Cir. 2001) (holding that a "summons to appear . . . constituted a lawful order or command by the court" and the defendant

4

"was obligated to comply with it"); *see also United States v. Bollenbach*, 125 F.2d 458, 460 (2d Cir. 1942) ("No judge can do his duty, if his power to maintain decorum and secure his authority from being flouted, is subject to cavil and captious question; he must be able to repress disorders quickly and, if necessary, ruthlessly[.]").

**B.     To Hold a Party in Civil Contempt, the Magistrate Judge May Certify the Facts Supporting a Contempt Finding and Order that a Show Cause Hearing be Set Before a District Judge.**

Under the Federal Magistrates Act, 28 U.S.C. § 636(e)(1), federal magistrate judges are authorized to exercise contempt authority in certain limited circumstances to enforce their lawful orders. Under 28 U.S.C. § 636(e)(6)(B)(iii), where an "act constitutes a civil contempt," the magistrate judge "shall forthwith certify the facts to a district judge and may serve or cause to be served . . . an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." *Id*.; *see also Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 905 (3d Cir. 1992) ("[U]nder § 636(e) a federal district judge adjudicates and punishes contempts which occur before a United States magistrate.") (citation omitted).

"Under the certification process, the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue an order of contempt." *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) (collecting cases) (internal quotations and citations omitted). "In certifying the facts under Section 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Id*. (internal quotations and citations omitted). Once the facts are certified, the magistrate judge issues "an order that the person whose behavior is at issue show

cause before the district judge why he should not be adjudged in contempt." *Taberer*, 954 F.2d at 906. In doing so, the "magistrate judge's certification of facts . . . serve[s] the function of a charging instrument or pleading for a trial to be held before the district judge." *Id*. at 903. Consequently, "[t]he district court, upon certification of the facts supporting a finding of contempt, is then required to conduct a *de novo* hearing at which issues of fact and credibility determinations are to be made." *Bowens*, 546 F. Supp. 2d at 71.

The District Court for the Central District of California used this process to hold the Chinese corporation "China Zhongwang Holdings" ("CZH") in civil contempt for failing to appear in response to a summons to appear in a criminal case. *See United States v. Liu, et al.*, 2:19-cr-00282-RGK (C.D. Cal.). After CZH failed to appear in response to summonses served for two different initial appearance dates, the United States moved to certify those facts and issue a show cause order against the company. *See* Gov't Motion for Certification of Facts and Issuance of Order to Show Cause against Defendant China Zhongwang Holdings, Dkt. 170 (Oct. 22, 2020). The magistrate judge then certified facts related to CZH's failure to appear and ordered the company to appear before the district court judge at a show-cause hearing approximately one month later. *See* Certification and Order to Show Cause re Contempt, Dkt. 171 (Oct. 22, 2020) (corrected in Dkt. 172). When CZH failed to appear, the district court judge granted the "Order to Show Cause re Contempt requesting sanctions." *See* Criminal Minutes, Dkt. 175 (Nov. 30, 2020). The district court judge then issued a written order holding CZH in civil contempt and imposed a daily fine to begin accruing seven days after the order if CZH continued to fail to appear. *See* Order

6

Issuing Civil Contempt Sanctions to Defendant China Zhongwang Holdings for Failure to Appear at Initial Appearance, Dkt. 177 (Dec. 2, 2020).

### C. Upon a Finding of Contempt, the Court May Impose Remedial Sanctions.

After finding a party in contempt, "the court may order an array of remedial sanctions, including issuing a fine or imprisoning the party." *United States v. McCormick*, No. 3:11-CV-114-TAV-CCS, 2015 WL 418481, at *1, 2015 U.S. Dist. LEXIS 11594, at *4 (E.D. Tenn. Feb. 2, 2015) (citing *Int'l Union v. Bagwell*, 512 U.S. 821, 828–29 (1994); *see also United States v. Tennessee*, 925 F. Supp. 1292, 1303 (W.D. Tenn. 1995) ("The range of sanctions available to courts include fine, imprisonment, receivership, and a broader category of creative, non-traditional sanctions.") (citations omitted). "When a fine imposed by the court is not compensatory, it is civil in nature if the contemnor has the opportunity to purge." *United States v. Tennessee*, No. 92-2062-D/A, 2006 WL 8437339, at *2, 2006 U.S. Dist. LEXIS 117389, at *13 (W.D. Tenn. Mar. 27, 2006). "[P]er diem fines are the paradigmatic civil fine to coerce obedience with a court's orders." *Id.* A daily fine, "imposed for each day a contemnor fails to comply with an affirmative court order," "exert[s] a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Bagwell*, 512 U.S. at 829.

When a civil contempt order imposes a fine, a court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947). In assessing the effectiveness of a fine, "[c]ourts are to consider the 'amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant.'" *ECIMOS, LLC v. Carrier Corp.*, 479 F. Supp. 3d 730, 736

(W.D. Tenn. 2020) (citing *United Mine Workers of America*, 330 U.S. at 304). "In essence, a fine must 'be substantial enough to make it more economical for [the contemnor] to comply than not to comply.'" *Gucci America, Inc. v. Li*, No. 10-cv-4974 (RJS), 2015 WL 7758872, at *3, 2015 U.S. Dist. LEXIS 160842, at *9 (S.D.N.Y. Nov. 30, 2015) (quoting *Perfect Fit Indus. Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).

## IV.  Argument

### A.  The United States Has Established a Prima Facie Case of Contempt Against CAPSULCN. The Court Should Order a Show Cause Hearing Before the District Judge.

"A party moving for civil contempt must prove that the non-moving party has violated a court order by clear and convincing evidence." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013) (citation omitted). Disobeying a summons can result in contempt just as disobeying any other court order. *See Bernadine*, 237 F.3d at 1283–84 (holding that a "summons to appear . . . constituted a lawful order or command by the court" and the defendant "was obligated to comply with it").

The United States has established a prima facie case of contempt against CAPSULCN such that the Court should order that a show cause hearing be set before the District Judge. The second set of summonses served on CAPSULCN were a clear and unambiguous court order that specified the date, time, and location of the hearing and required the recipient to appear at that hearing. The summonses included the name of the defendant, the case number, and a brief description of the offenses charged.

Moreover, the evidence before the Court establishes that the United States served the second summonses to appear on CAPSULCN to appear for initial appearance and arraignment on December 4, 2025 by *five* different means: (1) by email to CAPSULCN's retained legal counsel;

(2) by FedEx to CAPSULCN's retained counsel; (3) by fax to CAPSULCN's retained counsel; (4) by FedEx to CAPSULCN's registered office address in the United Kingdom; and (5) by FedEx to CAPSULCN's Chinese address displayed on its newly created domain, "www.capsulcn.com.cn." Certificate of Service, ¶¶ 3–8; *see also, e.g.*, Order Issuing Civil Contempt Sanctions at ¶ 4, *United States v. Liu, et al.*, No. 2:19-cr-00282-RGK (C.D. Cal. Dec. 2, 2020) (Dkt. 177) (holding Chinese corporate criminal defendant in contempt after finding it was served with criminal summons via email to counsel for its chairman and president, via email to its corporate headquarters in China, and via fax to its Hong Kong office).

Likewise, the evidence indicates that CAPSULCN received or was aware of one or more of these transmissions. In response to the emails sent to defense counsel which contained the summonses, the United States received a "Read Receipt" from an attorney representing CAPSULCN. Certificate of Service, ¶ 3. The FedEx delivery to CAPSULCN's legal counsel was delivered. *Id*. at ¶ 4. The faxes sent to CAPSULCN's legal counsel were confirmed to have been "successfully faxed." *Id*. at ¶¶ 5–6. The FedEx delivery to CAPSULCN's registered office address in the United Kingdom was delivered. *Id*. at ¶ 7. And the FedEx delivery to CAPSULCN's Chinese address displayed on its newly created domain, "www.capsulcn.com.cn" was received and signed for by "QIANSHOU." *Id*. at ¶ 8. Even though CAPSULCN was aware of the summonses requiring it to appear for initial appearance and arraignment on December 4, 2025, it failed to appear.

And all of this occurred against the backdrop of the CAPSULCN's stated refusal to appear for a September 5, 2025, initial appearance and arraignment. Indeed, this Court certified that CAPSULCN had been "served by a means that gives notice under Federal Rule of Criminal Procedure 4(c)(3)(D)(ii) with a summons to appear before the [Court] to answer the indictment against it." Order at 1, Dkt. 41 (Nov. 10, 2025). This Court also certified that "an attorney retained

to represent [CAPSULCN] indicated that Defendant would not appear for the initial appearance and arraignment scheduled for September 5, 2025." *See id* at *2*.

Taken together, the United States submits these facts establish CAPSULCN received the summonses and had notice of the date and location of the initial appearance and arraignment yet failed to appear. Furthermore, this evidence establishes a prima facie case that CAPSULCN violated a specific and definite order of the Court. Accordingly, the Government requests that the Court certify: (1) that the United States served a summons to CAPSULCN to appear for initial appearance and arraignment on December 4, 2025 pursuant to Federal Rule of Criminal Procedure 4(c)(3)(D)(ii); and (2) CAPSULCN failed to appear for initial appearance and arraignment on December 4, 2025. Accordingly, the United States requests that the Court order issue an order to CAPSULCN to appear at a date certain to show cause to the District Judge why it should not be adjudged in contempt by reason of the certified facts.

## V.      Conclusion

For the foregoing reasons, the United States respectfully requests that this Court (1) certify facts regarding the United States' service of a second summons to CAPSULCN to appear for initial appearance and arraignment on December 4, 2025, and CAPSULCN's subsequent failure to appear for its initial appearance and arraignment on December 4, 2025; and (2) issue an order for CAPSULCN to appear before the District Judge at a date certain to show cause why it should not be adjudged in contempt.

Dated: March 18, 2026
El Paso, Texas

Respectfully submitted,


JUSTIN R. SIMMONS
UNITED STATES ATTORNEY


By:     s/Steven Spitzer
        Steven Spitzer
        Assistant United States Attorney


LORINDA LARYEA, CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

By: *s/Colin W. Trundle*
    *s/Cadesby B. Cooper*
    Trial Attorneys
    U.S. Department of Justice
    Enforcement & Affirmative Litigation Branch

11